IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AMY BURKHART-DEAL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 8-1289 |
| vs. | ) |
| | ) |
| CITIFINANCIAL, INC., and | ) |
| DOES 1 through 10, inclusive, | ) |
| | ) |
| Defendants. | |

## OPINION AND ORDER

### SYNOPSIS

In this civil action ("Burkhart-Deal II"), Plaintiff alleges violations of Pennsylvania's Minimum Wage Act ("PMWA"), 43 Pa. CS. 333.101 et seq., Wage Payment and Collection Law ("WPCL"), 43 Pa. C.S.A. 260.1, and Administrative Code.[1]  The core of Plaintiff's Complaint is the failure to pay all wages earned. Plaintiff now seeks to certify a class pursuant to Fed. R. Civ. P. 23, of Financial Service Representatives ("FSRs") who worked in Defendant's approximately 110 Pennsylvania retail locations during the three-year period prior to the filing of the Complaint.

For the following reasons, I find that this matter is not appropriate for

---

[1]The WPCL creates a statutory remedy on behalf of employees for the recovery of wages and benefits owed to them by contract but wrongfully withheld by employers. Oberneder v. Link Computer Corp., 696 A.2d 148, 150 (Pa. 1997).  Similarly, the PMWA and other Pennsylvania regulations require that wages be paid for "all hours worked."  43 P.S. 333.104; 34 Pa. Code 213.21.

class treatment, and the Motion for Class Certification will be denied.[2]

## OPINION

### I. Applicable Standards

First, a party seeking class certification must demonstrate that the class satisfies the requirements of Rule 23(a): numerosity, or that the class is so numerous that joinder of all members is impracticable; commonality, or that there are questions of law or fact common to the class; typicality, or that the claims or defenses of the representative parties are typical of the claims or defenses of the class; and adequacy of representation, or that the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P.23(a).  Where, as here, a class is sought to be certified under Rule 23(b)(3), the class must also satisfy the Rule's superiority and predominance requirements.

Class certification is appropriate only "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 are met." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir. 2008).  The party seeking certification bears the burden of meeting all the requirements of Rule 23.  Id.  A failure to satisfy any one of the Rule's requirements is fatal to certification. Zlotnick v. Tie Communications, Inc., 123 F.R.D. 189, 190 (E.D. Pa. 1988).

### II. Plaintiff's Motion

#### A. Numerosity

The first prong of Rule 23(a) requires that the class be "so numerous that

---

[2]Via telephone today, Plaintiff indicated that she had no additional immediate information to offer, over and above that submitted in her filings.  Thus, I have disposed of this matter without the oral argument that Plaintiff initially requested.

joinder is impracticable." Joinder under the rule need only be impracticable, not impossible; in other words, class treatment is appropriate if joinder would be extremely inconvenient or difficult. Elias v. Ungar's Food Prods, Inc., 252 F.R.D. 233, 242 (D.N.J. 2007). Accordingly, a court must evaluate the practicability of joinder in the context of the particular litigation. Clauser v. Newell Rubbermaid, Inc., No. 99-5753, 2000 U.S. Dist. LEXIS 10631, at *9 (E.D. Pa. July 31, 2000).

A plaintiff may demonstrate numerosity by identifying a sufficiently large number of individuals who are members of the proposed class. Davis v. City of Philadelphia, No. 93-0495, 1994 U.S. Dist. LEXIS 3640, at *7 (E.D. Pa. Mar. 23, 1994). To do so, a representative must demonstrate "that 'common sense' suggests that it would be difficult or inconvenient to join all class members." Chemi v. Champion Mortg., No. 05-cv-1238, 2009 U.S. Dist. LEXIS 44860, at *17 (D.N.J. May 26, 2009). "Although there is no rigid guideline, courts typically hold that groups of twenty or fewer individuals are not so numerous that joinder is impracticable." Leitch v. MVM, Inc., 2004 U.S. Dist. LEXIS 14307, at *8 (E.D. Pa. July 21, 2004).

In that vein, unsupported speculation that more members might join at a later date is insufficient. E.g., Grigsby v. Kane, 250 F. Supp. 2d 453, 457 (M.D. Pa. 2003). Instead, a plaintiff may "reasonably estimate that the number is substantial, and they may rely on reasonable inferences drawn from the available facts." Niemiec v. Ann Bendick Realty, No. 04-CV-897, 2007 U.S. Dist. LEXIS 98840, at *17 (E.D.N.Y. Mar. 30, 2007)

Thus far in this case, the parties have proceeded under Plaintiff's proposed class definition, which reads, in pertinent part, as follows:

> All persons within the Commonwealth of Pennsylvania who, during the Class Period: (I) are/were employed as Financial Service Representatives with CitiFinancial; (ii) are/were not paid for all of the hours worked in a given workweek; and (iii) are/were not paid overtime compensation at a rate not less than one and one-half times their regular rate for each hour worked beyond forty (40) hours in a workweek....[3]

Here, Plaintiff contends that numerosity exists because there were approximately 700 branch employees in Pennsylvania during the Class Period. In contrast, Defendant argues that there is no evidence that those persons -- other than the ten declarants proffered -- were not properly compensated, as required by the class definition. In other words, it contends, all 700 FSRs are not properly included in the class. Defendant points, too, to the fact that Plaintiff's counsel was provided with contact information for all 700 putative class members for the purpose of conducting certification discovery, and now proffers only ten putative class members.

In response, Plaintiff does not dispute that she had access to all 700 putative class members for pertinent discovery purposes, or to insufficient information; indeed, counsel testifies that the law firm performed "extensive" factual research into the claims asserted. Nonetheless, Plaintiff does not in any way explain the dearth of identifications; assert that additional affidavits exist or could be readily procured; or offer any other evidence or argument that would contradict the suggestion that the eleven proffered affidavits represent the sum

---

[3]Plaintiff now proposes that the collective may be redefined, to capture all 700 employees at issue, without reference to the alleged failure to pay. I decline to redefine the class at this point. For reasons discussed in the body of the Opinion, I cannot draw the inference that all FSRs have a claim against Defendant. This matter will proceed under Plaintiff's original formulation of the collective group.

total, or something close thereto, of putative class members.[4]  Contrary to Plaintiff's urging, in the unqualified and conspicuous absence of factual support for this contention, I cannot "realize" that the submitted affidavits are merely a representative sample.  Instead, the affidavits themselves provide no grounds for concluding that it would be difficult or inconvenient to join the FSRs who claim to have been denied proper pay.

A Plaintiff, of course, may also rely on circumstantial evidence that demonstrates that there are numerous members of the proposed class.  <u>Davis</u>, 1994 U.S. Dist. LEXIS 3640 at *7.  In this case, however, circumstantial evidence is lacking.

The conduct that Plaintiff alleges affected all proposed class members does not provide circumstantial evidence that a larger class exists.  She relies an a "policy" requiring FSRs to work overtime, which was implicitly imposed by a conglomeration of, <u>inter alia</u>, sales and delinquency targets, demanding job responsibilities, and the infrequency of overtime pre-approval.   As Defendant posits, sales targets varied by position, month, and office.  Moreover, those targets were set by two different bonus incentive plans, each with a different structure.

The policy itself, therefore – unlike, for example, a blanket requirement that employees work through lunch, or check their e-mail prior to clocking into work – does not raise any common sense inference that there may be many

---

[4] I reject Plaintiff's assertion that Defendant's production of 20 affidavits supports the proposition that there are 680 class members.  The burden here rests on Plaintiff, and not on Defendant.

numerous affected persons, in addition to those that Plaintiff has identified.[5]  I am offered no hypothesis, informed or otherwise, of the number of persons who might be owed overtime and thus be included in the class.  The problem is not that the class cannot be ascertained; instead, the problem is that it can been ascertained, but there is no evidence that it is of a significant size.  Based on the evidence now of record, any estimate between 10 and 700 would be equally speculative.

Moreover, I emphasize that Rule 23(a)(1) is not a numerosity requirement "in isolation."  Clauser, 2000 U.S. Dist. LEXIS 10631, at *9.  Instead, as noted above, numerosity is a consideration inherent in the central analysis of whether joinder is practicable.  Id.  Impracticability is a "subjective determination based on number, expediency, and inconvenience of trying individual suits."  Pabon v. McIntosh, 546 F. Supp. 1328, 1333 (E.D. Pa. 1982).  In this case, the record provides absolutely no grounds for determining that joinder of putative class members would be impracticable, difficult, or inconvenient.  Because Plaintiff has failed to satisfy the numerosity requirement of Rule 23(a)(1), a class should not be certified.

**II. Predominance**

In this matter, Plaintiff proceeds under Fed. R. Civ. P. 23(b)(3), which requires that "questions of law or fact common to class members predominate

---

[5]Defendant connects the issue of ascertainability with that of numerosity.  While it is true that a class definition that hinges membership on a central liability issue may be untenable for various reasons, it is not reason alone for denying certification. See Jackson v. SEPTA, 260 F.R.D. 168, 183 (E.D. Pa. 2009).  Instead, the Court may redefine the class to remedy the problem. Id.  At this point, however, numerosity, rather than ascertainability, is of concern; I will not broaden the class definition merely to encompass all FSRs.

over any questions affecting only individual members."  This requirement, known as predominance, focuses on the cohesiveness of the class; i.e, the proposed common issue must not be overwhelmed by differences in factual and legal issues affecting individuals.  See Blain v. Smithkline Beecham Corp., 240 F.R.D. 179, 182 (E.D. Pa. 2007).  The predominance inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy . . . ." Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 117 S. Ct. 2231, 2249, 138 L. Ed. 2d 689 (1997).

Rule 23 provides a non-exhaustive list of matters to consider in making this determination:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

"When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  Mateo v. V.F. Corp., No. C 08-05313, 2009 U.S. Dist. LEXIS 105921, 15-16 (N.D. Cal. Oct. 27, 2009).  "Clearly, if proof of the essential elements of the cause of action require individual treatment, then there cannot be a predominance of 'questions of law and fact common to the members of the class.'"  In re Linerboard Antitrust Litig.,305 F.3d 145, 156 (3d Cir. 2002).

Where common proof is not available, thus requiring individualized "mini-trials," courts have found that the "staggering problems of logistics thus created"

make the case unmanageable as a class action.  Windham v. Am. Brands, Inc., 565 F.2d 59, 68 (4th Cir.1977).    Conflict between sales quotas and a policy discouraging overtime – or, otherwise stated, a policy of "maximizing sales and minimizing overtime" -- does not necessarily raise a predominant issue appropriate for class treatment.  Cf. Simmons v. T-Mobile, No. H-06-1820, 2007 U.S. Dist. LEXIS 5002, at **21, 24-25 (S.D. Tex. Jan. 24, 2007).[6]

     Plaintiff, in her briefs, suggests that predominance is satisfied by the common factual question of whether Defendant "required FSRs to work off-the-clock," and the legal question of whether Defendant's "practices violated Pennsylvania wage laws."   Plaintiff asserts that FSRs are primarily engaged in sales, and that they must meet pre-determined sales and collection targets to qualify for a bonus and to avoid negative consequences associated with underperformance.   The Plaintiff's affidavits indicate that declarants understood that they could be terminated, disciplined, or reprimanded if they did not meet their targets.  The kernel of the allegations, in sum, rests on a "culture" at CitiFinancial, caused by the nature of the job responsibilities and consequent pressure on employees.

    However, one must generalize at an unacceptably high level before the pieces of this litigation meld into the overall "policy" on which Plaintiff seeks to rely.   The alleged wrongdoing, thus broadly formulated, masks the individual circumstances on which Plaintiff's proposed class depends.   It is undisputed that

---

[6] Simmons addressed collective certification in an FLSA case, and is in certain respects distinguishable from the case at bar.  Simmons does, however, point up the significance of variables such as the lack of across-the-board quotas.

Defendant's written policy requires pre-approval of overtime, as well as payment of overtime, and also requires employees to accurately record all hours worked. It is also undisputed that overtime requests were granted infrequently, and thus were not uniformly denied.[7] Details of the departures from the "formal" policy, rather than presenting an unvarying and consistent pattern, differ in significant ways.

For example, the named Plaintiff testifies that she determined that it would be futile to submit overtime, because she knew it would not be approved, and that she was told that it would not be approved. Another affiant avers that her manager instructed her not to record overtime, and to change her recorded time; that overtime was "rarely" approved; and that she believes that the branch was not to exceed a set labor budget. The remaining affiants testify that it was "generally understood" that they were not to record overtime, because it was rarely approved, but point to no other particularized source for their understanding.[8] All state that they were offered flex or comp time in lieu of overtime pay, but were not always able to take advantage of that offering, because they were busy. The submissions suggest different reasons for working overtime, such as working during lunch to assist customers who were physically

---

[7]Although Plaintiff submits testimony that overtime was "rarely" approved, there is no factual support for her conclusory proposition that Defendant "systematically" denied overtime. "Systematically" implies action according to a fixed plan or method. Such a fixed plan or method, which would alter the analysis here, is glaringly absent.

[8]Indeed, the various subjective variables present – i.e., a class-wide assessment involving persons who "felt discouraged" from claiming overtime, or "understood" that they weren't to do so, as opposed to those persons who received managerial directives not to seek overtime -- causes me some concern. Cf. Chiang v. Veneman, 385 F. 3d 256, 271 (3d Cir. 2004) (discussing subjectivity in context of class definition).

present in the office, or working late or on weekends to meet quotas.   The declarations also point to different perceived sources for the "culture," some identifying sales targets, and one identifying a branch budget.  The alleged consequences for recording overtime, or failing to meet quotas, also differ – Plaintiff's submissions describe review by management, possible termination, discipline, failure to receive a bonus, or "possible management intervention."

Defendant, in turn, asserts that during the class period, it utilized two different incentive bonus plans for branches, each with a different structure, and that sales targets varied by position, month, and branch.[9]  Of the 114 branches in this Commonwealth, there have been almost 250 different managers during the pertinent time period.  Additionally, not all putative class members bore identical job expectations.  For example, Branch Account Managers differed from Branch Account Executives; the latter were expected to spend 60% of time, and the former 20% of their time, originating sales.[10]   There is also evidence, which Defendant submits by affidavit, that twenty Pennsylvania employees did not feel that they were required to discount their hours worked, and have not been denied overtime for hours worked in excess of forty hours per week.

Under these circumstances, and under applicable Rule 23 standards, it is clear that the blanket common issues to which Plaintiff points are vastly overpowered by individual issues.  Those issues are not, as Plaintiff suggests,

---

[9]As Plaintiff points out, different products and delinquencies were assigned different amounts of credits for purposes of meeting targets.

[10]Plaintiff defines "Financial Service Representatives" to include employees with both of these job titles.

limited to individual determinations of the amount of damages.[11]  Instead, the evidence demonstrates a significant variance among potential class members about a variety of material questions that would qualify each class member's case as a controversy.  That FSRs were subject to the same policies and procedures, or performed similar job duties, while not irrelevant, is not sufficient to create a cohesive class if those commonalities are overwhelmed by separate issues that are central to the litigation.[12]

I have found no factually and legally analogous cases that would support a predominance finding in this matter.  Indeed, although a Rule 23 class alleging off-the-clock claims is certainly not an impossibility, there are many cases in which factual underpinnings materially similar to those now presented resulted in a finding that common issues did not predominate.  See, e.g., Mateo, 2009 U.S. Dist. LEXIS 105921 at **16-17; Basco v. Wal-Mart Stores, Inc., 216 F.Supp.2d 592, 603 (E.D.

---

[11]Plaintiff correctly points out that "certification is routinely granted where the proposed class definition relies in part on the consideration of defendants' alleged liability." Noble v. 93 Univ. Place Corp., 224 F.R.D. 330 (S.D. N.Y. 2004).  I concur, and would not favor a per se rule that an overlap between liability and class definition precludes certification.  As discussed in Noble, such a rule could preclude legitimate class claims, and would also undermine the "rigorous analysis" that is required of courts.  On the other hand, as our Court of Appeals has observed, "there are cases where the question of damages is so central that it can, in some sense, overtake the question of liability." Veneman, 385 F.3d at 273.

[12]In addition, these variants blur the question of what, precisely, Plaintiff seeks to condemn.  Plaintiff clearly does not contend that the use of sales targets, requiring pre-approval of overtime, putting performance pressure, placing high demands on employees, and seeking to maximize profits are illegal practices.  Instead, through this litigation, she asks that the legal system assess whether some melding of these practices resulted in undue or unreasonable pressure on certain employees.  While evidence of a corporate "culture" is subject to legal review under certain circumstances, such as in the discrimination context, locating a single, testable policy proves difficult under the facts presented here.

La. 2002).[13]   In turn, Plaintiff submits no analogous cases in which the predominance requirement was deemed satisfied.

For example, she points to Kelley v. SBC, Inc., No. 97-CV-2729, 1998 U.S. Dist. LEXIS 18643 (N.D. Cal. Nov. 13, 2998), in which the court considered a putative class of persons who held the same job title as the named plaintiffs, in an action alleging misclassification as exempt employees.  The present Plaintiff posits that

---

[13]In Mateo, the plaintiff claimed that employees had to work off-the-clock during meal breaks, due to understaffing, in violation of official company policy.  In finding that class issues did not predominate, the court observed:

> To prove her claim, Plaintiff will need to demonstrate that: (1) she did in fact work off-the-clock, (2) she worked because a supervisor instructed her to do so and not because she decided for her own reasons to work through the break, (3) the instructions were based on a corporate practice and were not made by the supervisor in opposition to corporate policy, ...(6) she requested compensation for the missed break, and (7) [defendant] refused to compensate her despite her requests.  Each putative class member will need to go through a similar factual inquiry with similar individualized proof in order to prove [defendant's] liability for the claims

Mateo v. V.F. Corp., 2009 U.S. Dist. LEXIS 105921, 16-17 (N.D. Cal. Oct. 27, 2009).

In Basco, the court denied Rule 23(b)(3) class certification of off-the-clock work claims, based on a finding that the predominance requirement was not satisfied.  Despite its length, the full list of individual issues present in that case is pertinent here, and worth reciting:

> Individual issues also predominate plaintiffs' claims that they were required to work off-the-clock. In this instance ... the individualized issues will arise from the myriad of possibilities that could be offered to explain why any one of the plaintiffs worked off-the-clock. As defendant noted, as to any of the class members it may argue that: (1) the particular class member did not in fact work off-the-clock, (2) any instructions received to work off-the-clock without compensation were outside the scope of authority and directly contrary to well established policy and practice, (3) even if a particular class member did work off-the-clock, that employee unreasonably failed to avail themselves [sic] of curative steps provided by defendant to be compensated for that work, (4) if a class member received instructions from a fellow class member such as a personnel manager or hourly supervisor to work off-the-clock and/or not to request a time adjustment, then the class member unreasonably relied on instructions directly contrary to Wal-Mart's express policy, (5) a class member had an actual and/or constructive knowledge of Wal-Mart's policies banning off the clock work and voluntarily chose to engage in such work in deviance of that policy for any one of a number of reasons, and (6) that a particular class  member has a unique animus toward Wal-Mart or its employees that would cause that class member to fabricate or inflate his or her claims. Defendants have the right to present their defenses as to each plaintiffs' claim that he/she was required to work off-the-clock to the jury.

in Kelley, the common question of "whether [class members] were properly compensated" was sufficient to meet the predominance requirement.  This is inaccurate.  Instead, the court explicitly found common questions regarding "what [plaintiffs'] jobs entailed, what level of independent judgment they exercised, and whether…they were properly classified as exempt," and specifically stated that the putative class members were "classified as exempt under the same policy." Id. at *46.  The types of tangible legal and factual commonalities present in Kelley – i.e., those which were material to the litigation -- are largely absent from, and certainly do not predominate in, this case.

Plaintiff also points to Goldman v. Radioshack Corp., 03-0032, 2005 U.S. Dist. LEXIS 8742 (E.D. Pa. May 9, 2005),in which store managers claimed that they were wrongfully classified as exempt from overtime wages.  In Goldman, the Court noted that the defendant's standardized corporate procedures, to which store managers were required to adhere, dictated that managers spend the majority of their time on non-exempt activities.  Id. at **14-15.  Accordingly, the common elements of factual proof, as well as the common legal issue of misclassification, predominated.  As discussed supra, the present case involves no standardized procedures (whether written or unwritten), broadly applicable classification issue, or similar "policy" amenable to singular analysis.  Goldman, therefore, is unpersuasive here.

Finally, Plaintiff discusses Cuzco v. Orion Builders, No. 06-CV-2789, 2009 U.S. Dist. LEXIS 91347, at *28 (S.D.N.Y. Sept. 30, 2009), which discounted, for purposes of predominance under Rule 23 and without significant discussion, the importance

of variations in class members' hours worked or hourly rates. In Cuzco, however, workplace requirements and pay practices, central to the lawsuit, were common to the proposed class – for example, workers were paid a single hourly rate, regardless of how many hours they had worked; were required to obtain tools for which they were not reimbursed; and were subject to a pay schedule that resulted in payment outside the time limits required by state law. Id. at **4-5. Accordingly, individual differences did not threaten to consume the litigation. Again, for reasons already stated, this case is markedly different.

**III. SUPERIORITY**

In addition to other requirements discussed supra, a Rule 23(b)(3) action must be the "superior" method of resolving the claims. "Superiority must be looked at from the point of view (1) of the judicial system, (2) of the potential class members, (3) of the present plaintiff, (4) of the attorneys for the litigants, (5) of the public at large and (6) of the defendant…. Superiority must also be looked at from the point of view of the issues." Katz v. Carte Blanche Corp., 496 F.2d 747, 760 (3d Cir. 1974). In a Rule 23(b)(3) situation, "class-action treatment is not as clearly called for [as in other classes], but may nevertheless be convenient and desirable depending on the facts." Advisory Committee Notes, Subdivision (B)(3), Fed. R. Civ. P. 23. This subdivision "encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated…" Id. The non-exhaustive list of considerations applicable to predominance likewise apply to the superiority analysis. Fed. R. Civ. P. R. 23(b)(3)(A)-(D).

In this case, it would not be inefficient to manage individual claims, as there is no evidence that they are unwieldy in number. Moreover, there is a separate action pending against Defendant in this Court, involving similar factual predicates and claims for failure to pay for all hours worked.[14]  As discussed supra, managing a class action here would be complicated by the lack of a cohesive, predominant factual and legal issue, and the variable proofs for each individual putative plaintiff.  Although there is certainly no per se rule that state law overtime claims cannot be litigated in a Rule 23 class action, and several courts have certified such classes, some courts have noted that this format is unlikely to be a superior method for litigating such claims.  Marquez v. PartyLite Worldwide, Inc., No. 7-2024, 2007 U.S. Dist. LEXIS 63301, at *17 (N.D. Ill. Aug. 27, 2007); see also Woods v. National Sec. Agency, Inc., 5-5880, 2007 U.S. Dist. LEXIS 95807, at *20 (N.D. Ill. June 22, 2007).  In this case, a Rule 23 class is not superior.  I am confident that if a number of individual actions are to proceed simultaneously, the parties and the Court will enter into arrangements to reduce the burdens on all involved.

## CONCLUSION

In sum, Plaintiff has not met her burden to establish that joinder is impracticable in this case, and has not satisfied the numerosity requirement. Additionally, she has not shown that common issues of fact or law predominate, or that class treatment is superior.  Finding otherwise would be inconsistent with both the formal requirements and underlying purposes of Rule 23.  Because of

---

[14] By Order entered today, that nationwide FLSA action will be conditionally certified to include all of the Pennsylvania branches represented by the declarations submitted in this matter.

this disposition, I need not address the remaining requirements of the Rule.

An appropriate Order follows.

## ORDER OF COURT

AND NOW, this 4th day of February, 2010, it is hereby ORDERED, ADJUDGED, and DECREED that Plaintiff's Motion for Class Certification is DENIED.

BY THE COURT:

/s/Donetta W. Ambrose

Donetta W. Ambrose

Judge, U.S. District Court